U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

MAR 1 7 2009

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT ANTHONY FOSTER | CIVIL CASE NO. 1:06-1478 |
| -vs- | JUDGE DRELL |
| JAMES GUINN, et al. | MAGISTRATE JUDGE KIRK |

## RULING

Before the Court is Defendants' Motion for Partial Summary Judgment (Doc. 30). Defendants William Earl Hilton, James Guinn, and Justin Dean filed the present Motion on July 10, 2008 in which they addressed certain claims in Plaintiff's complaint that forms the basis of this suit. Accompanying the Motion was a statement of material facts and supporting affidavits. Notice issued from the Clerk of Court on July 10, 2008 to Plaintiff indicating that Plaintiff had fifteen calendar days from the date of the notice to file a memorandum in opposition. (Doc. 31). Neither a memorandum in opposition nor a controverting statement of material facts was filed by Plaintiff in response to the Motion.

I.  **Background**

Plaintiff Robert Foster, self-described in his complaint as suffering from a "schizoaffective disorder," alleges the relevant facts: Foster was stranded beside his inoperable vehicle on the roadside in Alexandria, Louisiana, when a Rapides

Parish sheriff's deputy pulled over in his patrol car in an attempt assist him. Foster and the first officer were outside their vehicles at this point. When a second sheriff's deputy arrived in his patrol car, Foster apparently became frightened and locked himself in his vehicle. The two[1] officers cooperated to remove Foster from his vehicle by the use of varying degrees of force. They applied "use of force continuum, including officer presence, verbal commands, and hard and soft empty hand control techniques," and also "escalated to the use of intermediate weapons," including at least one officer's "pepper spray" and at least one officer's "impact weapon." (Doc. 30-2, *Defendants' Statement of Material Facts* at 1). Foster was hospitalized and alleges severe injuries.

He sued the Rapides Parish Sheriff's Department,[2] former Rapides Parish Sheriff William Hilton in his official capacity, and the two officers in their individual and official capacities. Plaintiff complains of Mr. Hilton's failure to train the officers—resulting in alleged violations of his civil rights—and of excessive force and false arrest. Defendants' Motion seeks dismissal of "any and all federal law official capacity claims" against the sheriff and officers. (Doc. 30-3 at 10).

## II. Local Rules and Summary Judgment Standard

Rule 56.2 of the Local Rules of the United States District Court for the Western District of Louisiana provides that:

---

[1] A third sheriff's deputy who arrived just as Foster was subdued, and whose participation in the alleged events is unclear, died tragically prior to Plaintiff's suit being filed and was not made a party to this action.

[2] The sheriff's department has been dismissed from the suit. (Doc. 14).

### LR56.2  Opposition to Summary Judgment

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

*See also* FED. R. CIV. P. 56(d)(1) ("Establishing Facts"). Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). All inferences are to be drawn in the light most favorable to the nonmovant. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. *Brock v. Chevron U.S.A., Inc.*, 976 F.2d 969, 970 (5th Cir. 1992).

## III. Analysis

We begin our analysis with the threshold burden for the grounds alleged in Plaintiff's complaint:

> As a prerequisite, a plaintiff "must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." To establish § 1983 liability against supervisors, the plaintiff must show that: (1) the police chief failed to supervise or train the officer; (2) a causal connection existed between the failure to supervise or train and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounted to deliberate indifference to the plaintiff's constitutional rights.

*Roberts v. City of Shreveport*, 397 F.3d 287, 291–292 (5th Cir. 2005) (citations omitted) (rendering summary judgment on basis of qualified immunity). Further:

> [F]or a supervisor to be liable for failure to train, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." In this inquiry, mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability. But the plaintiffs have not even presented this much evidence. [According to evidence submitted by the defendant police department and officer,] Officer Rivet was trained extensively by the State of Louisiana, and his curriculum included additional instruction in the use of force from the State of Louisiana Peace Officer Standards and Training Council. In all, Officer Rivet received hundreds of hours of professional instruction.
>
> In addition, for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.

*Id.* at 293 (citations and footnote omitted).

4

Plaintiff has not alleged in his complaint generally that more or better training would have prevented his injuries. Nor has Plaintiff "allege[d] with specificity," how the training of the two officers was inadequate or defective. *Id.* On the other hand, Defendants have attached to their unopposed motion the affidavit and report of a police procedure and training expert, Mr. George Armbruster, and the affidavits of each of the two officers, all attesting to the extensive training of the officers involved. Mr. Armbruster opined that the officers had received training in the use of force continuum and the escalation of force, and that the training they received met or exceeded the requirement of the Louisiana State Peace Officers' Standards and Training ("POST"). Based on the amount of evidence supplied by Defendants and the lack of evidence presented by Plaintiff, Defendants' Motion for Summary Judgment will be granted on Plaintiff's § 1983 claims against Sheriff Hilton for failure to train.

Nor are we persuaded that Plaintiff's allegation that this single incident constitutes a policy of the Rapides Parish sheriff caused Plaintiff's injuries. The Fifth Circuit requires three elements to prove a sheriff's official liability based on the acts of his deputies: "(1) a decision by a decisionmaker that amounts to a policy under *Monell* and its progeny; (2) a decision so deliberately indifferent to the rights of the citizens that the [sheriff] fairly can be said to be culpable for the injury; and (3) sufficient causation between the specific policy decision and the resulting constitutional injury." *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). As the Fifth Circuit has elaborated:

> In [*Bryan County v. Brown*, 520 U.S. 397 (1997)], the Supreme Court clarified previous decisions that allow, in certain extreme circumstances, a single act by a municipal employee to form the basis of municipal liability apart from a pattern of unconstitutional activity. To rely on this exception, a plaintiff must prove that the "highly predictable" consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the "moving force" behind the constitutional violation. This circuit, in conformity with the Supreme Court's jurisprudence, has been highly reluctant to permit this exception to swallow the rule that forbids mere *respondeat superior* liability.

*Roberts*, 397 F.3d at 295–96 (citations and footnote omitted). Among the many materials appended to, an apparently relied upon in forming the opinions within, Mr. Armbruster's affidavit is a copy of the Rapides Parish Sheriff's Office's Policy on the Non-Lethal Use of Force. (Doc. 30-6, Exh. 4(D)). Based on the uncontroverted evidence of the officers' training in this case pursuant to the official policy of the sheriff, Defendants' Motion will be granted on Plaintiff's § 1983 claims that Sheriff Hilton's alleged failure to train amounted to a *Monell* policy or custom.

Lastly, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citations omitted). For this reason and the reasons above, any federal official capacity claims against the two officers will be dismissed, as they are legally redundant of the claims alleged against the Defendant Rapides Parish sheriff.

## IV. Conclusion

Regardless of the fact that neither any opposition to the Motion nor controverting statement of material facts has been filed by Plaintiff—meaning that the Motion is deemed unopposed and the statement of material facts is deemed admitted—this Court finds for the foregoing reasons that the Defendants' Motion is not without independent merit as a matter of law. Accordingly, Defendants' Motion for Partial Summary Judgment will be GRANTED and all official capacity claims against all Defendants will be dismissed with prejudice. After this ruling, the only remaining claims to be tried are those allegations of excessive force and false arrest pending against the two officers in their individual capacities. Lastly, Defendants' accompanying statement of material facts, insofar as they are facts and not conclusions of law, are deemed admitted. *See also* FED. R. CIV. P. 56(d)(1) ("Establishing Facts").[3]

---

[3] The following facts are from Defendants' Statement of Material Facts, and are, pursuant to Rule 56(d)(1), "not genuinely at issue" and are "treated as established in the action":

1. [Officers] Ledington [not a party, per note 1, *supra*], Guinn, and Dean have been trained in and did utilize the use of force continuum, including officer presence, verbal commands, and hard and soft empty hand control techniques.
2. Guinn, Ledington, and Dean have been trained in the use of intermediate weapons and techniques, including the use of pepper spray and the use of an impact weapon.
3. Ledington and Guinn did utilize the use of force continuum as described above, and also escalated to the use of intermediate weapons, with Guinn using pepper spray and Ledington using an impact weapon.
4. The training of Ledington, Dean, and Guinn falls within the generally accepted guidelines of the law enforcement community in Louisiana.
5. The training of Ledington, Dean, and Guinn met or exceeded the requirements set by the State of Louisiana Peace Officers' Standards and Training Council (POST), under authority of LSA-R.S. 40:2405.
6. At the time of the incident, Guinn, Dean, and Ledington were certified peace officers under POST.
7. The training given to Guinn, Dean, and Ledington complied with post minimum training mandates.
8. The line of supervision in place on the night of the incident, and subsequently, was

SIGNED on this 16th day of March, 2009, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

       reasonable and appropriate.

9. A sergeant responded to the scene of the incident and a lieutenant was involved in the decision to seek medical assistance for Foster.
10. The intervention of supervisors in the matter and in the subsequent internal investigation confirm the presence of proper supervision during and immediately after the incident, as well as subsequently, when a complaint was made to Sheriff Hilton.
11. Dean and Guinn attended the Alexandria Regional Police Training Academy, where both were POST-certified.
12. After receiving POST-certification at the Alexandria Regional Police Training Academy, Dean and Guinn also attended annual re-trainers and were re-certified in firearms and defensive tactics.
13. The procedures, custom and policy of the former Sheriff Hilton were not inadequate.
14. Sheriff Hilton was not deliberately indifferent in adopting the procedure, custom or policy, and [. . .]
15. No procedure, custom or policy directly caused Foster's injury.
16. There is no proof that any act or failure to act of former Sheriff Hilton amounted to deliberate indifference.

(Doc. 30-2).